Robert BARBIERI, Plaintiff,

v.

HARTSDALE POST OFFICE, Defendant.

No. 94 Civ 2891 (VLB).

United States District Court,
S.D. New York.

July 5, 1994.

Robert Barbieri, pro se.

Marianne T. O'Toole, Asst. U.S. Atty.,
New York, for U.S.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case presents the difficult problem of how to treat small claims against federal agencies brought by individual citizens who are unaware of legal technicalities. While individual claims such as that here for $270.20 are small, in the aggregate the effect of how the United States treats such matters is highly pertinent to how its citizens regard their government. To fail to seek workable means of dealing with small claims that come into the federal courts would be to disregard the fact pointed out by Judge Edward Weinfeld of this court that:

> [E]very case is important ...
> [A] case involving a small sum [is] as important to a poor person as a case involving millions of dollars ... to powerful interests.

Quoted in Lubasch, *Judge Edward Weinfeld,* NY Times, Jan. 18, 1988 at A16.

### II

Plaintiff filed a one-page form complaint *pro se* in the Small Claims Court of the Town of Greenburgh on April 11, 1994 seeking $270.20 from the Hartsdale Post Office for "wrongful postmark on letter causing tax penalty."

While unsupported by factual material at this stage, the claim involved here, a government agency has misdated a document leading to adverse consequences for an individual citizen, is not inherently implausible [1] in view of experience with such events. See *Cruz v. Sullivan,* 802 F.Supp. 1015 (S.D.N.Y.1992).

### III

Plaintiff Robert Barbieri was unaware that the Hartsdale Post Office was not a legal entity and that the United States Postal Service, an agency of the United States of America, was the responsible body. He was also, as far as appears, unaware that a formal administrative claim to the Postal Service under the Federal Tort Claims Act (28 U.S.C. §§ 2401[b], 2675) is a prerequisite to pursuing a suit against the United States for negligence.

Nine days later, on April 20, 1994 the United States filed a notice of removal under 28 U.S.C. § 1441, and on April 28, 1994 filed a motion to dismiss the removed case on grounds:

(a) that the sovereign immunity waiver provided by the Federal Tort Claims Act, 28 U.S.C. § 1346(b), is inapplicable because of an exception set forth in 28 U.S.C. § 2680(b), excluding from the Act any "claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter"; and

(b) that Mr. Barbieri had failed to file an administrative complaint and exhaust administrative remedies, or to plead compliance with 28 U.S.C. § 2675, considered a prerequisite to exercise of jurisdiction over a Federal Tort Claims Act complaint.

### IV

■ The postal exception to the Federal Tort Claims Act does not cover all negligent acts by postal authorities. See *Birnbaum v. United States,* 588 F.2d 319, 328 (2d Cir. 1978). In particular *Birnbaum* teaches us that "miscarriage" means misdelivery. The mail involved here was neither misdelivered nor lost. Nor was there negligence in the transmission of the mail to the recipient. Instead, harm claimed by plaintiff flowed from an allegedly erroneous postmark which plaintiff claims led to a tax penalty.

Had Congress intended the postal exemption to bar all negligence claims, it could have readily so stated rather than limiting the exception to specified events. See *Sea Robin Pipeline Co. v. FERC,* 795 F.2d 182, 184 n. 1 (D.C.Cir.1986) (R. Ginsburg, J.). Accordingly the first ground urged for dismissal of the complaint cannot be upheld.

---

**1.** *Matsushita Electric Industrial Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## V

Exhaustion of administrative remedies is not a blanket requirement for relief against governmental agencies. *Darby v. Cisneros,* — U.S. —, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993). Where required, such exhaustion is pragmatically evaluated to see if the objectives of the requirements are met. *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). In some instances where the underlying merits are sufficiently clear, such requirements are simply ignored even when called to the attention of the court. *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (see Stewart, J., dissenting at 541). Such requirements at the state level have been held not to bar relief in a mechanical manner where this might result in loss of federal rights. *Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988).

The administrative filing requirement under the Federal Tort Claims Act, however, is universally recognized as important to permit agencies to resolve problems where possible before the judiciary is called upon to do so. It has been considered a jurisdictional prerequisite to Federal Tort Claims Act suits even though no jurisdictional language relating to it can be found in any statutory or constitutional provision. *Wyler v. United States,* 725 F.2d 156, 159 (2d Cir.1983).

Apart from the Federal Tort Claims Act, plaintiff's claim could be characterized as one for violation of an implied contractual commitment by the Postal Service, as an agency of the United States, to provide accurate postmarks, inasmuch as such postmarks are known to be relied upon as indicating dates of mailing, for which consideration has been paid by the mailer. Such a claim would be cognizable under the Tucker Act (28 U.S.C. § 1346[a][2] ).

While, under 28 U.S.C. § 2675, an administrative claim would appear to be required for monetary relief under the Tucker Act (28 U.S.C. § 1346) as it would be under the Tort Claims Act, section 2675 does not require final agency action as a mandatory prerequisite before equitable relief such as correction of the error may be granted if appropriate.

Nor is a requirement of exhaustion of administrative remedies automatically inferred unless called for by statutory language or structure. *Darby v. Cisneros, supra.*

Equitable relief if appropriate could be provided on a contract claim. See *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); see also *K Mart Corp. v. Cartier,* 485 U.S. 176, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988). Consequently this court has subject matter jurisdiction over the case, even though Mr. Barbieri may not be able to pursue a monetary claim unless an administrative complaint is pursued and rejected. For pragmatic rather than jurisdictional reasons, in a case of this type agency consideration of appropriateness of corrective action should precede judicial consideration of relief.

## VI

To consign Mr. Barbieri's $270.20 claim to the rubbish heap because of his procedural ignorance would not be "worthy of our great government," *United States v. Sears, Roebuck & Co.,* 778 F.2d 810, 818 (D.C.Cir.1985) (R. Ginsburg, J.), quoting *Brandt v. Hickel,* 427 F.2d 53, 57 (9th Cir.1970); see Taft, *The Delays of the Law,* 18 Yale L.J. 28 (1908); Eliot, *Inefficiency in the Administration of Justice,* 49 American L.Rev. 171 (1915). Such an outcome would also run counter to the "meaningful access to the courts ... protected under the First Amendment." *Bates v. State Bar of Arizona,* 433 U.S. 350, 376 n. 32, 97 S.Ct. 2691, 2705 n. 32, 53 L.Ed.2d 810 (1977).

In some instances, removal of a state court small claims case because of the presence of jurisdiction under 28 U.S.C. § 1331 places an impecunious natural person plaintiff at a disadvantage. Small claims courts are tailored to the frequent inability of such plaintiffs to go to court during regular working hours or to comprehend complex procedural and statutory issues. New York State has, indeed, made numerous efforts to make its small claims courts more accessible and more effective. See L.1979, ch. 78; L.1981, ch. 764; L.1985, ch. 154; L.1984 ch. 926; L.1987, ch. 157 (raising the jurisdictional amount to

$2,000), all amending Article 18 of various Court Acts (such as the Civil Court Act).

██ Notices of removal of small claims cases brought by natural persons should not be automatically filed whenever removal is authorized by statute, but rather filed sparingly, where settlement has been unsuccessfully attempted or the claim appears to lack any merit, and the assistance of the federal court in dealing with the matter is considered important. See *Shea v. Road Carriers*, 818 F.Supp. 631, 632—33 & n. 2 (S.D.N.Y.1993).

Whether initiated by removal or otherwise, what may be called "federal small claims" frequently challenge the ability of the courts to provide the "just, speedy and inexpensive" determination called for by Fed.R.Civ.P. 1, sentence 2 as amended in 1993. See *Dickman v. F.D.R. VA Hospital*, 148 F.R.D. 513 (S.D.N.Y.1993).

The United States Attorney often necessarily functions as the attorney "for the situation," a phrase coined by Justice Brandeis at his confirmation hearings,[2] while at the same time protecting the taxpayer from unjustified impositions. See Seymour, *The Best Public Law Job in the Nation*, 25 Rec Ass'n Bar City of NY 242 (1970). I have every confidence that the United States Attorney will fulfill this role to the extent feasible.

Avenues are in fact open to permit the just disposition of this matter without disregarding the administrative filing requirement for Federal Tort Claims Act and monetary Tucker Act suits.

### VII

██ One approach may be for Mr. Barbieri to inform the court and the United States of what tax penalty resulted from the allegedly erroneous postmark, attaching copies of the penalty notice and any papers or other information showing when the document was in fact mailed or received.

---

2. See Frank, *The Legal Ethics of Louis D. Brandeis*, 17 Stanford L Rev 683 (1965); G. Hazard, *Ethics in the Practice of Law* ch 4 at 58 (1978).

3. Another avenue—but one which would initiate still further expenditures of tax funds as well as causing delay in resolving this matter—would be

Once this is done, if Mr. Barbieri's factual claim is persuasive, the United States might either communicate with the appropriate taxing authority (particularly if it is the Internal Revenue Service), indicating that possible grounds to vacate the penalty may exist. Another option might be for the United States if appropriate to provide Mr. Barbieri with a statement to that effect which he could submit to the taxing authority, or the postmark could be corrected if erroneously affixed.[3]

Mr. Barbieri should provide the above-mentioned information to permit his case to proceed if appropriate, as well as to permit the United States to determine if his grievance can be redressed informally or administratively. His complaint prepared for the small claims court is inadequate for these purposes.

If Mr. Barbieri fails to submit documents or affidavit evidence within 45 days of the date of this memorandum order sufficient to indicate that the claimed error in fact took place and caused a tax penalty, he is now on notice that his claim may be dismissed on the merits under Fed.R.Civ.P. 56 without further notice. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Jacobson v. Cohen*, 151 F.R.D. 526 (S.D.N.Y.1993).

### VIII

The motion to dismiss is denied.

for the United States to provide Mr. Barbieri with appropriate forms to file an administrative complaint, accompanied by written instructions on printed forms or otherwise, indicating what information is needed.